IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BLAKE PERRITT                                                   PLAINTIFF

    v.                    Civil No. 07-2031

TRANE US INC.                                                   DEFENDANT

MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant's motion for summary judgment (Doc. 11), Plaintiff's response (Doc. 16), Defendant's reply (Doc. 19) and supporting pleadings. Plaintiff Blake Perritt claims Defendant Trane US Inc. violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"),[1] and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*, in discriminating against Perritt by terminating his employment because he was perceived to have a drug addiction. Trane contends that Perritt fails to demonstrate he is disabled within the meaning of the ADA,[2] that the termination was not motivated by discrimination based on Perritt's condition and

---

[1] Plaintiff's complaint implicates the ADA while erroneously citing Title VII. The pleadings, however, treat the dispute as a claim under the ADA, and Defendant's motion contains a thorough ADA analysis. Plaintiff does not allege a cause of action under Title VII. Thus, the Court analyzes Defendant's motion as challenging claims under the ADA.

[2] The ADA definition of "disabled" includes "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(C).

that Trane had legitimate nondiscriminatory reasons for terminating Perritt unrelated to drug use.

As reflected herein, the Court finds Perritt fails to create a genuine issues of material fact as to whether he is disabled within the meaning of the ADA and ACRA. As disability is an essential element of Perritt's claims, Perritt fails to put forth evidence necessary to support his claims. Accordingly, Defendant's motion should be and is hereby **GRANTED** as to each of Plaintiff's claims, and Plaintiff's claims under the ADA and ACRA are **DISMISSED WITH PREJUDICE**.

### I.   Background

On February 27, 2006, Trane hired Perritt to work on the manufacturing line of Trane's air conditioning manufacturing plant in Fort Smith, Arkansas. Perritt claims that, prior to his employment, he used and was addicted to methamphetamine, marijuana and alcohol.[3] (Doc. 17 p. 2; Doc. 13 ¶ 4; Doc. 18 ¶ 4.) When Perritt was hired by Trane, his urinalysis drug screen was negative. On his medical questionnaire, he denied

---

[3] Perritt has never received medical treatment for addiction, dependency or any medical problems resulting from drug use. (Doc. 13 ¶ 5; Doc. 18 ¶ 5.) Perritt claims that he was a drug addict and that he discontinued use of drugs, alcohol and nicotine "cold turkey" approximately "a week or two before" accepting employment with Trane. (Perritt Depo. pp. 17-18.)

ever using "any type of drugs in [his] lifetime." (Ex. 5 p. 7.)

As an hourly employee, Perritt's employment was subject to a Collective Bargaining Agreement ("CBA") with the United Auto Workers ("UAW"), Local 716.  Under the CBA, new employees are subject to a ninety-day probationary period, during which even one occurrence[4] absence is cause for termination.  During Perritt's probationary period, he received good evaluations from his supervisor, Ronnie Randolph, and had no absences.  Within the following three months, Perritt received one full day absence, two four-hour tardies and four tardies of less than four hours.  Under Trane's "no fault" attendance policy, Perritt's absenteeism amounted to four occurrences, meriting the issuance of a "Four Occurrence Letter," the first step in Trane's disciplinary procedure.[5]

On September 20, 2006, in anticipation of Trane's seasonal layoff, Trane supervisors completed so-called "Lack Of Work" or "LOW" evaluations, in which they evaluated and made recommendations for rehiring employees who would be laid off.  Randolph made a recommendation against rehiring

---

[4] An occurrence is defined as an absence of indefinite length attributable to a single cause, such as an illness.

[5] Under the disciplinary procedure, accumulation of ten occurrences in a period of twelve months results in termination.

AO72A
(Rev. 8/82)

Perritt.[6]

On or about September 22, 2006, Trane laid off 147 employees, including Perritt. Directly following the layoff, Trane estimated it would need to recall approximately 10 employees within one month of the layoff. Under the CBA, the most senior of the employees chosen for recall were to be the first recalled. Among the 147 employees laid off, Perritt was among the 10 most senior. Of those 10, three had recommendations against rehire. To avoid recalling employees with recommendations against rehire, Trane sent termination letters to those three employees, including Perritt. (Doc. 13 ¶ 52; Doc. 18 ¶ 42.) However, after the termination letters were sent, Trane determined that it was unnecessary to recall any of the laid-off employees.

The UAW filed a grievance against Trane, concerning the interpretation of a provision of the CBA that addresses the recall rights of employees, like Perritt, with less than one year of employment and the proper process for terminating such

---

[6] Perritt contends the recommendation was made based on knowledge of his former drug addiction. (Doc. 18 ¶ 45.) Perritt contends Randoph was made aware of his drug addiction by Trane Human Resource Generalist Sherry Dieter, who learned of Perritt's drug addiction through attending the same church as Perritt's mother. Trane contends the recommendation was made based on Perritt's attendance problems. (Doc. 13 ¶ 45.)

employees.[7]  That dispute was apparently settled, and Trane was required to change its records to reflect that the terminations of the three employees were only permissible due to breaks in their continuity of service.

## II.  Standard of review

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "material" fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party.  *Id*. at 248.  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden

---

[7] Trane interpreted the CBA not to give recall rights to employees with less than one year of employment. Employees with more than one year of employment were expressly given recall rights and safe harbor from termination during their "continuity of service" periods. The grievance resulted in an amendment to the CBA granting continuity of service protections for employees with less than one year of employment.

then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-57 (citing Fed. R. Civ. P. 56(e)). In order to withstand a motion for summary judgment, a plaintiff must substantiate its allegations with "sufficient probative evidence that would permit a finding in their favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied,* 507 U.S. 913 (1993) (quotations and brackets omitted). A mere scintilla of evidence is insufficient to avoid summary judgment*. Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994).

### III. Discussion

Perritt alleges discrimination in violation of the ADA and ACRA because he was "perceived [by Trane] as disabled." (Complaint p. 2 ¶ 8; Doc. 17 p. 2.) ACRA provides courts, in construing ACRA, can "look for guidance to . . . federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983," Ark. Code Ann.

§ 16-123-105(c), ACRA "does not similarly point to decisions reached interpreting the Americans with Disabilities Act." *Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 401 (Ark. 2002). Thus, the Court addresses Plaintiff's ADA and ACRA claims separately.

### A.   Plaintiff's claim under the ADA

ADA disputes are analyzed under the burden-shifting analysis created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Burchett v. Target Corp.*, 430 F.3d 510, 516 (2003). Under the *McDonnell Douglas* test, Perritt bears the initial burden of establishing a *prima facie* case for discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case under the ADA, Perritt must demonstrate (1) his condition as a recovering drug addict qualifies as a disability within the meaning of the ADA, (2) he is qualified to perform the essential functions of his position, and (3) he has suffered an adverse employment action due to his disability. *See Samuels v. Kansas City Missouri School Dist.*, 437 F.3d 797, 801 (8th Cir. 2006). Trane concedes that Perritt can perform the essential functions of his job and that Perritt suffered an adverse employment action. (Doc. 12 p. 12.) Thus, the dispositive issues are whether Perritt puts forth affirmative evidence creating genuine issues of material fact as to (1) whether Perritt

AO72A
(Rev. 8/82)

suffers from a condition that qualifies as a disability under the ADA and (2) whether Perritt's termination was motivated by Trane's knowledge of prior drug addiction. As the Court finds Plaintiff fails to create a genuine issue of material fact as to whether he is disabled within the meaning of the ADA, the Court need not reach the issue of whether Plaintiff establishes discriminatory motive.

Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities," 42 U.S.C. § 12102(2)(A), "a record of such an impairment," 42 U.S.C. § 12102(2)(B), or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). Plaintiff alleges generally that his "recovering drug addiction is covered under the ADA and is a protected status." (Doc. 17 p. 8.) Plaintiff fails to identify or cite the provision or provisions of § 12102(2) on which he bases his argument. However, based on Plaintiff's claim that he was "perceived by the Defendant as disabled," (Doc. 17 p. 2.), the Court concludes Plaintiff relies on § 12102(2)(C) to argue Trane regarded him as having an impairment in the form of a prior drug addiction. There is no evidence or allegation in Plaintiff's pleadings that he suffers from an impairment that substantially limits major life activities consistent with (2)(A), nor does Plaintiff present or claim to present a

record of impairment pursuant to (2)(B).  As there are no allegations or evidence on which to analyze Plaintiff's claims under those provisions, the Court analyzes Plaintiff's ADA claim under (2)(C).[8]

The ADA protects employees recovering or recovered from prior drug addictions.  *See Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 823 (8th Cir. 1997) (recognizing alcoholism as a disability under the ADA); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 284 F.3d 35, 46

---

[8] Relevant regulations offer guidance in determining when an ADA plaintiff is regarded as having an impairment under (2)(C). *Wilson v. Georgia-Pacific Corp.*, 4 F. Supp. 2d 1164, 1170-71 (N.D. Ga. 1998).  Those regulations state that an employee "[i]s regarded as having such an impairment" when the employee:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).  Perritt does not identify the particular provisions of 29 C.F.R. § 1630.2(l) under which he claims to have been regarded as having a disability. However, as reflected below, Perritt cannot support a claim under § 12102(2)(C) through any of the provisions of § 1630.2(l).

(2d Cir. 2002) ("drug addiction, is an 'impairment' under the definitions of a disability set forth in . . . the ADA"); *Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment Practices,* 95 F.3d 1102, 1105 (Fed. Cir. 1996) ("it is well-established that alcoholism meets the definition of a disability" under the ADA).  The parties agree that prior drug addiction can constitute a disability under the ADA.  (Doc. 12 p. 14; Doc. 17 p. 8.)  Similarly, "the ADA protects employees who are erroneously regarded as being current illegal drug users."  *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998).  While 42 U.S.C. § 12114 excludes current drug users from ADA protection regardless of whether they might satisfy § 12102(2), rehabilitated drug users and those erroneously regarded as using drugs are not excluded.[9]  *See* 42 U.S.C § 12114(b).  However, it is critical to note that "the erroneous perception of being an illegal drug user is to be treated like any other perception of a disability, and is only to be considered a qualifying disability if the employer perceives the disability to substantially limit a major life

---

[9]

Section § 12114(a) excludes employees "currently engaging in the illegal use of drugs" from the definition of a "qualified individual with a disability."  However, § 12114(b) provides that "[n]othing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who . . . is erroneously regarded as engaging in such use, but is not engaging in such use . . . ."

activity.[10]   *Nielsen*, 162 F.3d at 610 (citing *inter alia* 29 C.F.R. § 1630.3, App. for the proposition that "individuals who are erroneously considered by their employers to be illegally using drugs 'are still required to establish that they satisfy the requirements of [the statutory and regulatory] definitions in order to be protected by the ADA'

---

[10]

Similarly, if the Court treated Perritt's complaint as alleging disability based on § 12102(2)(A) or (B), Perritt would have to "demonstrate that he was actually addicted to drugs or alcohol in the past, and that this addiction substantially limited one or more of his major life activities." *Buckley v. Consolidated Edison Co. of New York, Inc.*, 127 F.3d 270, 274 (2d Cir. 1997); *City of Middletown*, 284 F.3d at 47 ("To prevail, a recovering drug addict or alcoholic 'must demonstrate [not only] that he [or she] was actually addicted to drugs or alcohol in the past, [but also] that this addiction substantially limit[s] one or more of his [or her] major life activities.'").

Perritt concedes that he was never diagnosed to have a drug addiction and that he never received medical treatment or rehabilitative treative for addiction or problems resulting from addiction.  (Doc. 13 ¶¶ 5, 6; Doc. 18 ¶¶ 5, 6.)  "[I]t is important to emphasize that past drug *addiction,* not merely past use, is required to make out a claim under the ADA.  *Id*. (citing EEOC Manual § I-8.5 ("[A] person who casually used drugs illegally in the past, but did not become addicted is not an individual with a disability based on the past drug use.  In order for a person to be 'substantially limited' because of drug use, s/he must be addicted to the drug.")).

The "mere status as an alcoholic or substance abuser does not necessarily imply a 'limitation' . . . ." *City of Middletown*, 284 F.3d at 47 (citing *Burch v. Coca-Cola Co.,* 119 F.3d 305, 316-17 (5th Cir. 1997) (holding alcoholism is not a *per se* disability and evidence that alcoholics, in general, are impaired is an inadequate showing of limitation)).  Perritt has presented no evidence suggesting he was addicted to drugs, such that he suffered limitation of major life activities, or establishing a record of such addiction.

and *E.E.O.C. v. Exxon Corp.*, 973 F. Supp. 612, 613-14 (N.D. Tex. 1997 for the proposition that an 'individual who falls under one of the subcategories of 42 U.S.C. § 12114(b) is not automatically a 'qualified person with a disability' for purposes of protection under the ADA,' but 'must prove they suffer from a 'disability' as that term is defined in 42 U.S.C. § 12102(2)'). On the facts of *Nielson*, similar to those of the case at bar, the United States Court of Appeals for the Tenth Circuit explained:

> . . . Nielsen could avoid summary judgment only by presenting evidence to the district court that, when taken in the light most favorable to Nielsen, would have allowed a reasonable jury to conclude . . . that Nielsen had a perceived disability protected under the ADA because [Nielsen's employer] Moroni Feed erroneously believed he was illegally using drugs and that the perceived use was severe enough to substantially limit one or more of his major life activities . . . .

*Nielsen*, 162 F.3d at 611. Similarly, in order to avoid summary judgment by creating a genuine issue of material fact under § 12102(2)(C), Perritt must put forth affirmative evidence that Trane regarded Perritt as having a drug abuse problem of sufficient severity as to substantially limit one or more of his major life activities.

"Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *City of Middletown*, 284 F.3d at 47 (citing 28 C.F.R. § 41.31(b)(2);

Page 12 of 17

45 C.F.R. § 84.3(j)(2)(ii); 24 C.F.R. § 100.201(b)). To be substantially limited "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002).

On similar facts involving a similar motion for summary judgment, the *Nielsen* Court determined:

> Nielsen has failed to present evidence showing a genuine dispute of material fact in this regard. First, Nielsen has failed to produce any evidence that Moroni Feed erroneously believed he was illegally using drugs which use was severe enough to substantially limit one or more of his major life activities. While Nielsen did present evidence that at least some decision-makers at Moroni Feed at some point were concerned about his behavior and about his perceived addiction to prescription painkillers, Nielsen proffered no evidence that anyone at Moroni Feed believed this perceived drug addiction was severe enough to substantially limit one or more of his major life activities. Indeed, Nielsen failed to state explicitly what major life activities, if any, Moroni Feed regarded as substantially limited by the perceived drug addiction. Nielsen simply argued that Moroni Feed "fired him due to his perceived disability in violation of the ADA." Hence, in terms of substantial limitation of a major life activity, the most we can infer from Nielsen's argument is a contention that Moroni Feed fired him because it believed he suffered from a drug addiction severe enough to prevent him from performing his duties as President of the co-op. However, such a contention, even if true, falls well short of establishing that Moroni Feed regarded Nielsen as having a disability substantially limiting the only major life activity implicated by Nielsen's argument-namely, working.

162 F.3d at 611. Like Nielsen, Perritt contends merely that his "recovering drug addiction is covered under the ADA and is a protected status." (Doc. 17 p. 8.) Like Nielsen, Plaintiff presents some "evidence that at least some decision-makers . . . at some point were concerned about his behavior and about his perceived addiction." *Nielsen*, 162 F.3d at 611. Plaintiff presented testimony suggesting that the Trane supervisors who made the decision to terminate Plaintiff's employment may have been made aware of his drug addiction by Sherry Dieter, who may have learned of the addiction while attending church with Perritt's mother. However, like Nielsen, Perritt "proffered no evidence that anyone at [the company] believed this perceived drug addiction was severe enough to substantially limit one or more of his major life activities." *Id.* Plaintiff, like Nielsen, "failed to state explicitly what major life activities, if any, [his employer] regarded as substantially limited by the perceived drug addiction." *Id.* Like the *Nielsen* Court, this Court may only presume that Perritt contends Trane regarded him as having an addiction that substantially interfered with "the only major life activity implicated by [his] argument--namely, working." *Id.* However, "such a contention, even if true, falls well short of establishing that [Trane] regarded [Perritt] as having a disability . . . ." *Id.*

AO72A
(Rev. 8/82)

"An employer does not necessarily regard an employee as substantially limited in the major life activity of working simply because it believes that individual is incapable of performing a particular job." *Sutton v. United Air Lines, Inc.*, 130 F. 3d 893, 904 (10th Cir. 1997). Rather, "[t]o demonstrate that an impairment substantially limits the major life activity of working, an individual must show significant restriction in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." *Nielsen*, 162 F.3d at 611 (quotations and brackets omitted). Perritt contends Trane believed it was his drug addiction that caused him to receive one full day absence, two four-hour tardies and four tardies of less than four hours in a three-month period. The infrequency of Perritt's absences, while casting doubt on the wisdom of Trane's decision to terminate Perritt's employment, cannot be said to provide the basis of a claim that Trane believed Perritt to suffer from a disability. Perritt fails to allege and presents no evidence supporting the propositions that Trane regarded him as suffering from an addiction that substantially limited a major life activity, the nature of that activity or, presuming that activity is working, the class or broad range of jobs that Trane believed Perritt was unable to perform. Thus, the Court

AO72A
(Rev. 8/82)

must conclude that no reasonable jury could find Plaintiff to satisfy § 12102(2).

As Perritt fails to create a genuine issue of fact as to whether he is disabled within the meaning of the ADA, the Court need not determine whether Trane based the decision to terminate Perritt's employment on such disability.

### B.   Plaintiff's claim under ACRA

As described above, the complaint, and subsequent pleadings by the Plaintiff, cannot be read to implicate a theory of disability under the ADA other than one based on an employer's erroneous perception of an employee as being a drug user. ACRA "differs materially from the federal [ADA]" in the respect that "there is no express provision for a cause of action for one who is simply 'regarded as' having a disability by others." *Faulkner*, 69 S.W. 3d at 401. When the plaintiff in *Faulkner* appealed to the Arkansas Supreme Court "to extend the plain language of the Arkansas Civil Rights Act's definition of disability to include coverage for persons *regarded as* having a disability, the court "decline[d] to expand the statutory definition of disability in this manner as it would be akin to legislating." *Id.* at 402. Accordingly, Perritt's claim of discrimination is not cognizable under ACRA, and summary judgment is appropriate on Plaintiff's ACRA claim.

AO72A
(Rev. 8/82)

**C.   Conclusion**

Based on the foregoing, the Court determines Plaintiff fails to create a genuine issue of material fact as to essential elements of each of his claims.  Accordingly, Defendant's motion for summary judgment (Doc. 11) should be and hereby is **GRANTED** as to Plaintiff's claims under the ADA and ACRA.  As there are no claims remaining, Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED this 13th day of February 2008.

*/s/ Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge